UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**HARTFORD FIRE INSURANCE COMPANY,**
       -Plaintiff

      -v-                                        CIVIL 3:05 CV 1019(TPS)

**DENT-X INTERNATIONAL, INCORPORATED ET AL.,**
       -Defendants

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is a products liability case brought under the Connecticut Products Liability Act, Conn. Gen. Stat. §§ 52-572m-q, and before this court on diversity jurisdiction. The defendants Dent-X International Incorporated ("Dent-X"), and AFP Imaging Corporation ("AFP") move for summary judgment (Dkt. #35), as does co-defendant Sullivan-Schein Dental Sales & Services ("Sullivan-Schein") (Dkt. #28). The joint-motion filed by Dent-X and AFP **(Dkt. #35)** is **DENIED** in all respects. Sullivan-Schein's motion **(Dkt. #28)** is **DENIED** as to the products liability count and **GRANTED** as to the negligence count.

### I.    FACTUAL BACKGROUND

Unless otherwise noted, the following facts are uncontroverted or reasonably appear beyond dispute.

On Saturday, May 31, 2003 a fire occurred at the office of Simsbury Pediatric & Adolescent Dentistry, LLC ("Simsbury

Dentistry") in Simsbury, Connecticut. Simsbury Dentistry held a fire insurance policy with the plaintiff, Hartford Fire Insurance Company ("Hartford Fire"), who brings this case as Simsbury Dentistry's subrogee. It is undisputed by all sides that the fire originated in a dental x-ray film processor located in Simsbury Dentistry's office. Dent-X[1] is in the business of selling the x-ray processor in question. Sullivan-Schein is a distributor, servicer, and repairer of dental x-ray equipment including the x-ray processor in question here. Sullivan-Schein performed service on the machine in question.

In simple terms, the x-ray processor works as follows. Dental films move through the processor on a series of rollers and are carried through a fluid that is contained in trays. The fluid is warmed to approximately 83 degrees Fahrenheit. A temperature sensor contained in one of the trays regulates the heat of the fluid. When the sensor registers below its proper temperature, it calls for power to go to a small heating unit that heats the solution in the trays.

Relevant potions of the processor's installation, operation and maintenance manual are as follows. Under the term "Operation" the manual reads, "Turn the Main Power Switch OFF and close the water supply valve at the end of the day." Under the heading

---

[1] Because Dent-X is a division of AFP the court will refer to them throughout the opinion collectively as "Dent-X."

"Maintenance" and the subheading "Weekly Maintenance Procedures"
the manual reads:

    1.    Turn Main Power Switch OFF
    2.    Remove the Access Covers and Evaporator Plates
    3.    **(9000 Only)** Remove the Film Sensor Bar and set aside (Figure 25).
    4.    Remove Transport Racks from the developer and fixer (Figure 26). Wash racks throughly with warm tap water, scrubbing with a sponge or the soft bristle brushes provided to remove any chemical residue.
        **NOTE:** Do not use soap or any commercial cleaning agents.
        After rinsing thoroughly, drain and **leave racks to dry in a vertical position** over the week-end or until the start of the next working day.
    5.    Inspect the Washer/Dryer rollers and clean as necessary (see Monthly - As Required)
    6.    Before starting the machine at the beginning of the next working day, replace both Transport Modules in their original Solution Trays. . . .
    8.    Turn Main Power Switch ON.

(Dkt. #28 Ex. 3)(emphasis in original). After the fire, the processor was found in such a position and state as to indicate that it had been cleaned at the close of business on the day before the fire, a Friday. Trays were found on the top of the unit by the Fire Department. Plaintiff's expert, Joseph Cristino, found the machine partially disassembled upon inspection

    Mr. Cristino conducted inspections and tests on several different days. He was not able to visualize the on/off switch because it had been destroyed as a result of the fire. He could find no physical evidence that would indicate whether the switch was in an "on" or "off" position. A report filed by Mr. Cristino indicated that the processor was "off" at the time of the fire.

This information may have been included in the report by virtue of a statement by the Fire Marshal that the processor was "possibly turned off."

Mr. Cristino was not able to locate the exact ignition point of the fire within the processor. He could not state with a reasonable degree of engineering certainty whether the ignition source was within the on/off switch. He did, however, testify that his opinion was that an electrical failure occurred in the general area of the on/off switch. (Cristino Dep. at 108, 118.) One of defendants' experts, Christopher Flaherty, concluded that the ignition point was in the "rear-center or rear-left" of the processor, which is not where the on/off switch was located. (Aff. of Christopher Flaherty ¶7.)

The electrical fault that caused the fire could have been caused by some sort of electrical insulation breakdown resulting from the processor being left on for a considerable period of time. The processor could have been left on when the dental staff left for the weekend that Friday night.

The on/off switch is a manual switch manipulated by the operator. The switch on this particular processor was a "true" on/off switch, meaning that, if operating as designed, when in the "off" position no current would flow through the machine. Defendant Sullivan-Schein replaced the on/off switch on the processor in question in June 2002, approximately one year before

the fire. Between June of 2002 and the date of the fire the processor was used without notable incident.

## II. STANDARD FOR SUMMARY JUDGMENT

The standards governing summary judgment are well-settled. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "An issue of fact is 'genuine' where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Giordano v. City of New York, 274 F.3d 740, 746 (2d Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" Id. at 746-47. If evidence exists from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996). All factual inferences are to be drawn in favor of the party against whom summary judgment is sought. Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989).

### III. DISCUSSION

**A. Products Liability**

The complaint alleges both design defect and failure to warn theories of products liability. (Compl. ¶ 13.) The briefs focus exclusively on the design defect issue and, therefore, the court will confine its discussion to this issue as well.

The law in Connecticut with regard to design defect products liability is well-settled. It derives from Restatement (Second), of Torts § 402A (1965). It states,

> In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the consumer without substantial change in condition.

Id.; Potter v. Chicago Pneumatic Tool Co., 694 A.2d 1319, 1330 (Conn. 1997). Defendants' motion appears to assail primarily the issue of causation (prong 2) and, to a far lesser extent, whether the plaintiff has put forth enough evidence to make out a prima facie showing of an unreasonably dangerous defective condition (prong 3).

**1. Causation**

Defendants' chief contention with respect to causation is that plaintiff's expert cannot pinpoint for certain exactly what component within the x-ray processor was defective and thus "[i]t

-6-

is entirely possible that the fire resulted from some other cause, such as the on/off switch of the processor being inadvertently left on over the weekend contrary to the instruction manual." (Dkt. #30 at 9.) Defendants argue that the plaintiff has thus failed to sustain its burden of showing that a defect within the x-ray processor was the proximate cause of the injury incurred. More specifically, they argue first that this is not the type of case wherein causation can be inferred without the need for expert opinion merely from the fact that the incident has occurred. Their basis for this assertion derives from their contention that the undisputed evidence in the record suggests that the injury occurred do to the operator's improper use of the x-ray processor. Defendants next argue that the expert opinion of Mr. Cristino is insufficient as a matter of law because it does not pinpoint a specific defective component within the processor. The court finds both arguments unavailing.

For over one hundred and fifty years the doctrine of res ipsa loquitur has given juries in negligence cases the ability to infer causation from the mere fact that a certain harm was suffered. Restatement (Second), of Torts § 328D. The theory is that certain harms do not normally occur absent negligence. In appropriate cases, res ipsa loquitur thus relieves the plaintiff of her normal burden of setting forth a prima facie case of causation.

Courts have adopted an approach similar to that of res ipsa

loquitur in products liability cases under the name "malfunction doctrine." Under the malfunction doctrine

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

Restatement (Third), of Torts: Products Liability § 3; Fallon v. Matworks, No. X01CV030185487S, 2007 WL 125643, at *4-5 (Conn. Super. Ct. Jan 2, 2007)("a product defect may be inferred by circumstantial evidence that (1) the product malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction").

> Where the existence of a defect is proved circumstantially by evidence of the manifestation of the defect, an attempt to isolate the elements of defects and causation will be academic, if not futile. In a real sense, the jury have found causation when they conclude that the malfunction is attributable to the defect.

Liberty Mut. Ins. Co v. Sears, Roebuck & Co., 406 A.2d 1254, 1257 (Conn. Super. Ct. 1979).

The defendants contend that the malfunction doctrine is inapplicable here because plaintiff's alleged act of leaving the x-ray processor on over the weekend was an "improper use." Defendants' assertion is incorrect on a number of fronts.

First, defendants overlook the fact that the current record

-8-

cuts both ways with regard to whether the power switch was on or off. Circumstantial evidence supports the conclusion that the switch was on, but other testimonial evidence such as the Fire Marshall's contemporaneous statements as well as Mr. Cristino's initial report indicate that it was off. Defendants appear to concede that if the machine was off at the time of the fire then the malfunction doctrine would be appropriately applied here. The court agrees. Whether the switch was on or off is therefore a genuine issue of material fact. If the jury found that it was off it could reasonably infer that a powered down x-ray processor should not spontaneously catch fire absent a defect. Summary judgment would be inappropriate on this ground alone.

Second, the court further concludes that even if the jury found that the machine were on at the time of the fire it still would be permitted to infer causation from the circumstances. Assuming the other factors met, the doctrine is only inapplicable when an outside factor other than the defect is the **sole** cause of the injury. Restatement (Third), of Torts: Products Liability § 3(b). The jury might reasonably conclude that failing to turn the machine off was only a contributing factor. Under the Connecticut Products Liability Act the plaintiff's comparative responsibility for the injury incurred does not bar recovery, but may reduce the award of damages. Conn. Gen. Stat. §52-572o(a).

Third, the jury might reasonably conclude that leaving the x-

ray processor on was not a misuse at all. "Misuse occurs when a product is not used in a manner which should have been foreseen by the defendant." Norrie v. Heil Co., 203 Conn. 594, 600 (1987). Clearly, the jury could conclude that leaving the machine on over the weekend was foreseeable.

Fourth, the defendants cite the case Gold v. Dalkon Shield Claimants Trust, 1998 WL 351456 (D. Conn. June 15, 1998) presumably for the proposition that the present case is so technical and complicated that an expert's opinion is necessary. As should be clear from the discussion thus far the court disagrees. Here we have a dental x-ray processor, essentially a film developer, that was either powered on or off and sitting by itself in a room in a dentist's office. Over the weekend, with no one around, the machine suddenly caught fire. No one asserts any other cause for the fire save for an electrical malfunction somewhere within the unit itself. These are not the type of complicated technical facts that only an expert can explain for the jury.

The present case is thus distinguishable from Gold because that case involved complicated medical testimony regarding whether the defendant's birth control device could have caused plaintiff's infertility. 1998 WL 351456, at *1, 3. The medical testimony in Gold was thus not within a "layperson[']s common knowledge and experience. Id. at *3. In contrast, the facts here are uncomplicated and straightforward.

Finally, because the court finds that there are multiple genuine issues of material fact which if reasonably resolved in plaintiff's favor could allow a jury to infer causation through circumstantial evidence, there is no need to address defendants' contention that Mr. Cristino's testimony is insufficient. The court merely notes, however, that defendants' attempt to analogize Mr. Cristino's opinion to the opinion of the expert in Graham v. Fireline, 3:03CV00990, 2006 WL 1646165 (D. Conn. June 14, 2006) is inappropriate because it mischaracterizes the specificity of Mr. Cristino's conclusions. In Graham, the expert enumerated seven potential ways that the metal casting operation in question could have gone awry and caused the injuries suffered. 2006 WL 1646165, at *4. The expert determined that no one way was more probable than any other. Id. at *8. Under only one of the seven theories set forth could the defendant's product be said to have caused the injuries. Id. at *7. On this basis Judge Thompson granted summary judgment because the expert's testimony was "not sufficient to establish a causal link between that defect and the plaintiff's injuries." Id. at *8.

Mr. Cristino's findings here are much more specific. He has concluded that the fire originated inside the x-ray processor within a four to six inch radius of the on/off switch. (Aff. of Joseph A. Cristino P.E. ¶6; Cristino Dep. 118:10-25, 119:10-14.) He also concluded that the fire was definitely caused by an

electrical fault or arching activity in the area of the on/off switch causing excessive heat and melting. (Cristino Dep. 91:15-19.) In light of the circumstantial evidence as well as Mr. Cristino's testimony, a jury could reasonably determine that a malfunction in one of the wires caused the fire. It could also reasonably conclude that the wire was part of the original machine sold and manufactured by Dent-X, part of the on/off switch sold and installed by Sullivan-Schein, or the jury could assign liability to both defendants.[2]

---

2

Perhaps because they have elected to file one joint brief in support of summary judgment, defendants have seemingly overlooked what is potentially the most glaring causation issue in this case--the issue of "but for" causation. Due to the extensive fire damage, no expert has been able to pinpoint exactly what wire within the machine malfunctioned. It is possible that an original wire caused the fire and it is also possible that a wire associated with a replacement part caused the fire. If only one wire was defective only one defendant could possibly be responsible. The situation is thus similar to the seminal case of Summers v. Tice, 199 P.2d 1 (Cal. 1948). In Summers, the plaintiff hunter was injured when two of his companions simultaneously fired bird shot at a quail near where he was standing. A shot striking the plaintiff's eye caused the most damage and could only have come from one gun, but it could not be ascertained from which. The trial court entered judgment against both defendants although only one's action could possibly have been the "but for" cause of the plaintiff's injuries. The California Supreme Court affirmed, holding that fairness dictates that in these types of cases the burden will shift to each defendant to prove that his independent action was not the cause of the injury. Id. at 4. Otherwise an injured party would go uncompensated while the responsible tortfeasor escaped liability.
   This court, sitting by diversity, has the duty to apply the substantive law of Connecticut as this court believes the Supreme Court of Connecticut would so hold. That being said, the Summers burden shifting has never been formally adopted in Connecticut. It has, however, been codified in the Restatement (Second) of Torts,

-12-

In sum, defendants' arguments with regard to causation are unavailing. There are numerous factual issues which, if resolved by a jury in plaintiff's favor, could lead a jury to conclude that a design defect in the x-ray processor in question caused the plaintiff's injuries.

**2. Design Defect**

Connecticut uses the "consumer expectation" test or, in appropriate circumstances, the "modified consumer expectation" test to determine whether a product's design is defective. Potter, 694 A.2d at 1333. Under either theory a jury here could reasonably determine that the x-ray processor was defective.

The consumer expectation test is as the name suggests. It determines defectiveness based on what an ordinary consumer would expect from the product. Id. Here, if the power switch were found to be turned off, a reasonable jury could conclude that a consumer purchasing the x-ray processor would not expect it to spontaneously catch fire. A reasonable jury could also conclude that a consumer should be expected to occasionally forget to turn the machine off. If so, the jury could conclude that an ordinary consumer would not expect the machine to catch fire even if it were left on for an extended period of time.

---

§ 433B(3) which forms the basis for the Connecticut Products Liability statute. In the interim sixty years Summers has thus become so much a part of the "black letter" law on causation that, if presented with the issue, the Supreme Court of Connecticut would likely adopt its rationale.

The modified consumer expectation test would yield the same result. Under the modified consumer expectation test the jury is instructed on the product's risks and utility and then asked whether it is unreasonably dangerous. Id. The utility of the machine in question here is plainly evident. Most everyone has been to the dentist and had x-rays taken. This machine allows the dentist to take x-rays of the patient's mouth and process the pictures quickly onsite. This process allows the dentist to review the x-ray photos with the patient during the same visit in which they were taken rather than scheduling a follow-up visit and waiting for off site processing. The streamlined process is both convenient for the patient and has undoubtedly alleviated unnecessary pain.

However, even in the best case scenario from defendants' perspective the risks associated with the processor are apparently high. As defendants seem readily willing to admit, if the machine is left on for a long period of time it can catch fire. The resulting fire can cause property damage as well as bodily harm or loss of life. A reasonable jury could balance the risk and utility of the unit and determine that it was unreasonably dangerous.

**B.  Negligence**

The complaint alleges negligence against defendant Sullivan-Schein only. To the extent liability is alleged to stem from Sullivan-Schein's activity as a seller of a defective product, the

negligence claim is absorbed by the Connecticut Products Liability Act. Conn. Gen. Stat. § 52-572n(a). Here, however, Sullivan-Schein also performed service on the x-ray processor. In a Rule 12(b)(6) context, therefore, it is possible for plaintiff to maintain a claim for both products liability and negligence against Sullivan-Schein. However, under Rule 56 plaintiff must show at least some factual basis to support its claim. Aside from sheer speculation, the record is devoid of any evidence that Sullivan-Schein negligently performed any service. Summary judgment on the negligence count is therefore appropriate.

## IV. CONCLUSION

For the reasons set forth herein the joint motion for summary judgment filed by Dent-X and AFP **(Dkt. #35)** is **DENIED** in all respects. Sullivan-Schein's summary judgment motion **(Dkt. #28)** is **DENIED** as to the product liability count and **GRANTED** as to the negligence count. This case is before the undersigned pursuant to 28 U.S.C. § 636(c) and D. Conn. Magis. R. 73(A)(1). This is not a recommended ruling and not appealable to a district judge.

**IT IS SO ORDERED**

**Dated at Hartford, Connecticut this 23rd day of March, 2007.**

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**